Russell S. Thompson, IV (029098)
Thompson Consumer Law Group, PC
11445 E Via Linda, Ste. 2 #492
Scottsdale, AZ 85259
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com
Attorneys for Plaintiffs

*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mari Soliz and Denise Rico, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>The University of Phoenix, Inc.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiffs Mari Soliz and Denise Rico ("Plaintiffs"), individually and behalf of and all others similarly situated, assert the following against Defendant The University of Phoenix, Inc. ("University of Phoenix" or "Defendant"), based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1. Plaintiffs brings this class action complaint against Defendant for its (i) failure to properly secure and safeguard highly valuable, protected personally identifiable information, including without limitation, names and contact information, dates of birth, social security numbers, and bank account and routing numbers

(collectively "PII"); (ii) failure to comply with industry standards to protect information systems that contain PII; (iii) unlawful disclosure of Plaintiffs' and Class Members' PII; and (iv) failure to provide timely and adequate notice to Plaintiffs and other Class Members that their PII had been disclosed.

2. Defendant is a private for-profit university with nearly 3,000 academic staff and over 100,000 enrolled students.

3. On November 21, 2025, Defendant detected a cybersecurity incident on its systems, involving the Oracle E-Business Suite software platform ("Oracle EBS") (the "Data Breach").

4. The Data Breach involved an unauthorized third-party who exploited a previously unknown software vulnerability in Oracle EBS to exfiltrate PII within Defendant's Oracle EBS environment.

5. The Data Breach affected the PII of Plaintiffs as well as Defendant's current and former students, employees, faculty, and suppliers.

6. As a result of Defendant's failures and lax security protocols, cybercriminals gained access to Defendant's students' PII and were able to exfiltrate their PII, including their Social Security numbers.

7. Defendant obtained Plaintiffs' and Class Members' PII and maintained that sensitive data in a negligent and/or reckless manner.

8. Defendant had a duty to safeguard and protect its students' PII which was entrusted to it, and could have prevented this theft had it implemented and maintained reasonable data security measures and protocols in order to secure its students' data.

9. Defendant was fully aware that the education industry is a prime target for cyber threats. High profile education industry data breaches put it on notice of this fact.

10. The Data Breach was a direct and proximate result of Defendant's failure to implement and follow basic security procedures.

11. Because of Defendant's failures, unauthorized individuals were able to access and pilfer Plaintiffs' and Class Members' PII.

12. As a result, Plaintiffs and Class Members are at substantially increased risk of future identity theft, both currently and for the indefinite future. Plaintiffs' and Class Members' PII, including their Social Security numbers, that were compromised by cybercriminals in the Data Breach, is highly valuable because it is readily useable to commit fraud and identity theft.

13. Plaintiffs, on behalf of themselves and all others similarly situated, bring claims for negligence, negligence *per se*, and unjust enrichment.

14. Plaintiffs seek damages and injunctive relief requiring Defendant adopt reasonably sufficient practices to safeguard the PII in Defendant's custody and control to prevent incidents like the Data Breach from recurring in the future.

15. Given that information relating to the Data Breach, including the systems that were impacted, the configuration and design of Defendant's systems and its integration with Oracle EBS, remain exclusively in Defendant's control, Plaintiffs anticipate additional support for their claims will be uncovered following a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Members of the Class defined below, and a significant portion of putative Class Members are citizens of a different state than Defendant.

17. This Court has personal jurisdiction over Defendant because Defendant is registered to do business with the Arizona Corporation Commission.

18. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in the State of Arizona and in this District, and has continuous and systematic contacts with the State of Arizona.

19. This Court also has specific personal jurisdiction over Defendant related to this action because Plaintiffs' claim arises out of Defendant's contacts with students in this state and District.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

### I. Plaintiffs

21. Plaintiff Mari Soliz ("Ms. Soliz") is a citizen and resident of the State of California.

22. Ms. Soliz is a former enrolled student at Defendant. Ms. Soliz provided and entrusted her PII to Defendant in order to receive educational benefits and services.

23. Plaintiff Denise Rico ("Ms. Rico") is a citizen and resident of the State of California.

24. . Rico is a former enrolled student at Defendant. . Rico provided and entrusted her PII to Defendant in order to receive educational benefits and services.

**II. Defendant**

25. Defendant The University of Phoenix is domestic for-profit corporation incorporated in Arizona, with its principal place of business located at 4035 South Riverpoint Parkway, Phoenix, Arizona 85040-0723.

26. Defendant is a private for-profit university with nearly 3,000 academic staff and over 100,000 enrolled students, with campuses located throughout the country.

## BACKGROUND

**I. Defendant Obtains, Collects, and Stores PII**

27. Defendant is in complete operation, control, and supervision of its systems, and configured and designed its systems without adequate data security protections.

28. Plaintiffs and Class Members entrusted Defendant with safely securing and safeguarding their PII.

29. Defendant did not properly verify, oversee, and supervise its entrustment of Plaintiffs' and Class Members' PII.

30. By obtaining, using, disclosing, and deriving a benefit from Plaintiffs' and Class Members' PII, Defendant assumed legal and equitable duties and knew or should

have known that it was responsible for protecting Plaintiffs' and Class Members' PII from disclosure.

31. Plaintiffs and Class Members reasonably expect that a university such as Defendant will use the utmost care to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

32. Despite the above representations, Defendant failed to prioritize data and cyber security by adopting reasonable data and cyber security measures to prevent and detect the unauthorized access to Plaintiffs' and Class Members' PII.

33. Had Defendant followed industry guidelines and adopted reasonably security measures, Defendant would have prevented the theft of Plaintiffs' and Class Members' PII.

**II. FTC Guidelines**

34. Defendant is prohibited by the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

35. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

36. The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand its network's vulnerabilities, and implement policies to correct any security problems.

37. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

38. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

39. Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII, or to prevent the disclosure of such information to unauthorized individuals, as reflected by the sensitive Social Security information stolen, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

40. Defendant was always fully aware of its obligations to protect the PII of students because of its business of obtaining, collecting, and disclosing PII as well as collecting, storing, and using other confidential personal and financial information. Defendant was also aware of the significant repercussions that would result from its failure to do so.

## SUBSTANTIVE ALLEGATIONS

### I. The Data Breach

41. On or around December 2, 2025, Defendant posted a statement to its website that it had experienced a "cybersecurity incident" involving the Oracle EBS.

42. Similarly, Defendant's parent corporation, Phoenix Education Partners, Inc., filed an 8-K with the U.S. Securities and Exchange Commission on December 2, 2025, announcing the Data Breach.

43. Defendant detected the Data Breach on November 21, 2025.

44. The Data Breach involved "an unauthorized third-party" who "exploited" a software vulnerability in Oracle EBS to exfiltrate PII within Defendant's Oracle EBS environment.

45. As part of the Data Breach, the unauthorized third-party obtained certain PII, including the names and contact information, dates of birth, social security numbers, and bank account and routing numbers with respect to current and former University of Phoenix students, employees, faculty and suppliers.

46. Although Defendant has yet to attribute the Data Breach to a specific cybercrime group, public reporting by the data security website *Bleeping Computer*

indicated the Data Breach is part of a *Clop* ransomware gang extortion campaign in which the gang exploited a zero-day flaw (CVE-2025-61882) to steal sensitive documents from multiple victims' Oracle EBS platforms since early August 2025.

47. According to *Bleeping Computer*, the *Clop* ransomware gang added the exfiltrated PII from Defendant to its data leak site.

48. *Clop* has also recently targeted other educational institutions, including Harvard and the University of Pennsylvania, which have also confirmed Oracle EBS breaches impacting their students and staff.

49. *Clop* is also believed to have compromised the Oracle EBS of dozens of companies, including GlobalLogic, Logitech, The Washington Post, and the American Airlines subsidiary Envoy Air, and leaked the stolen data on its dark web site.

50. Previously, *Clop* was also behind the data theft campaigns targeting GoAnywhere MFT, Accellion FTA, Cleo, and MOVEit Transfer customers, the latter affecting more than 2,770 organizations.

51. Plaintiffs' PII was disclosed without their authorization to unknown third parties as a result of the Data Breach.

52. As a result of the Data Breach, Plaintiffs spent significant time and effort researching the Data Breach, reviewing and monitoring their accounts for fraudulent activity. Plaintiffs have also seen an increase in spam and suspicious telephone calls and text messages in the wake of the Data Breach.

53. Plaintiffs' place significant value in the security of their PII. Plaintiffs entrusted their PII to Defendant with the understanding that Defendant would keep their

information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

54. The Data Breach has caused Plaintiffs to suffer anxiety and stress from concerns that they face an increased risk of financial fraud, identity theft and other types of monetary harm as a result of the stolen information. Plaintiffs place significant value in the security of their PII.

55. Plaintiffs and Class Members suffered actual damages as a result of the failures of Defendant to adequately protect the sensitive information entrusted to it, including, without limitation, exposure of the PII on the dark web, increased spam and suspicious telephone calls and text messages, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of their PII, and other economic and non-economic harm. Plaintiffs and Class Members will now be forced to expend additional time to review and monitor their accounts for fraud or identity theft.

56. As a result of the Data Breach, Plaintiffs has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## II. Defendant's Data Security Failures Caused the Data Breach

57. Up to, and including, the period when the Data Breach occurred, Defendant breached its duties, obligations, and promises to Plaintiffs and Class Members, by its failure to:

a. Hire qualified personnel and maintain a system of accountability over data security, thereby knowingly allowing data security deficiencies to persist; and

b. adequately safeguard students' sensitive PII and maintain an adequate data security environment to reduce the risk of a data breach or unauthorized disclosure.

## III. Defendant's Data Security Failures Constitute Unfair and Deceptive Practices and Violations of Consumers' Privacy Rights

58. The FTC deems the failure to employ reasonable and appropriate measures to protect against unauthorized access to sensitive personal information an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

59. In 2007, the FTC published guidelines that establish reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

60. The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

61. The FTC has issued orders against businesses that have failed to employ reasonable measures to secure sensitive personal information. These orders provide further guidance to businesses regarding their data security obligations.

62. Prior to the Data Breach, and during the Data Breach itself, Defendant failed to follow guidelines set forth by the FTC and actively mishandled the management of its IT security.

63. Furthermore, by failing to have reasonable data security measures in place, Defendant engaged in an unfair act or practice within the meaning of Section 5 of the FTC Act.

## IV. The Value of the Disclosed PII and Effects of Unauthorized Disclosure

64. Defendant understood the protected PII it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the PII and those who would use it for wrongful purposes.

65. PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers.

66. Sensitive personal information commonly stolen in data breaches has economic value. The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals

routinely post stolen personal information on anonymous websites, making the information widely available to a criminal underworld. There is an active and robust market for this information.

67. The forms of PII involved in this Data Breach are particularly concerning. Unlike credit or debit card numbers in a payment card data breach—which can quickly be frozen and reissued in the aftermath of a breach—unique Social Security numbers cannot be easily replaced. Even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

68. The Social Security Administration (''SSA") warns that the process of replacing a social security number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit

> history under the new number may make more difficult for you to get credit.

69. Social Security numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit—among other services. Often Social Security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes Social Security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

70. The ramifications of Defendant's failure to keep Plaintiffs' and Class Members' PII secure are long lasting and severe.

71. To avoid detection, identity thieves often hold stolen data for months or years before using it. Also, the sale of stolen information on the "dark web" may take months or more to reach end-users, in part because the data is often sold in small batches as opposed to in bulk to a single buyer. Thus, Plaintiffs and Class Members must vigilantly monitor their financial accounts *ad infinitum*.

72. Thus, Defendant knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its systems were breached. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

73. As a highly sophisticated party that handles sensitive PII, Defendant failed to establish and/or implement appropriate administrative, technical and/or physical

safeguards to ensure it protected the security and confidentiality of Plaintiffs' and Class Members' PII to protect against anticipated threats of intrusion of such information.

74. Identity thieves use stolen PII for various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes, including credit card fraud, phone or utilities fraud, bank fraud and government fraud.

75. The PII exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiffs and Class Members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are which are other ways for cybercriminals to exploit information they already have in order to get even more personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

76. There is often a lag time between when fraud occurs versus when it is discovered, and also between when PII is stolen and when it is used.

77. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

78. PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market for years.

79. Plaintiffs and Class Members rightfully place a high value not only on their PII, but also on the privacy of that data.

80. Thus, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

## V. The Data Breach Damaged Plaintiffs and Class Members

81. As a result of Defendant's deficient security measures, Plaintiffs and Class Members have been harmed by the compromise of their sensitive PII, which is likely currently for sale on the dark web and through private sale to other cyber criminals and/or being used by criminals for identify theft and other fraud-related crimes.

82. Plaintiffs and Class Members face a substantial and imminent risk of fraud and identity theft as their names have now been linked with their dates of birth and Social Security numbers as a result of the Data Breach. These specific types of information are associated with a high risk of fraud.

83. Plaintiffs have been damaged as a result of the Data Breach, *inter alia*, as described above.

84. Many Class Members will also incur out of pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

85. Plaintiffs and Class Members also suffered a "loss of value" of their sensitive PII when it was stolen by hackers in the Data Breach. A robust market exists for stolen PII. Hackers sell PII on the dark web—an underground market for illicit activity, including the purchase of hacked PII—at specific identifiable prices. This market serves as a means to determine the loss of value to Plaintiffs and Class Members.

86. Identity thieves can also combine data stolen in the Data Breach with other information about Plaintiffs and Class Members gathered from underground sources, public sources, or even Plaintiffs' and Class Members' social media accounts. Thieves can use the combined data to send highly targeted phishing telephone calls, text messages, and emails to Plaintiffs and Class Members to obtain more sensitive information. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiffs' and Class Members' names, taking out loans in Plaintiffs' and Class Members' names, using Plaintiffs' and Class Members' information to obtain government benefits, filing fraudulent tax returns using Plaintiffs' and Class Members' information, obtaining Social Security numbers in Plaintiffs' and Class Members' names but with another person's photograph, and giving false information to police during an arrest.

87. Plaintiffs and Class Members also suffered "benefit of the bargain" damages. Plaintiffs and Class Members overpaid for educational services that should have been—but were not—accompanied by adequate data security. Part of the money paid by Plaintiffs and Class Members to Defendant as part of its tuition and fees were

intended to be used to fund adequate data security. Plaintiffs and Class Members did not get what they paid for.

88. Plaintiffs and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are burdensome and time-consuming, especially because Defendant has disclosed little information about the Data Breach, forcing students to continue to monitor their accounts indefinitely.

89. In the case of a data breach, merely reimbursing a consumer for a financial loss due to identity theft or fraud does not make that individual whole again, especially when that individual spent significant time monitoring their accounts and rectifying any problems that arose.

90. A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim whose personal information (including Social Security numbers) has been stolen may not become aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

## CLASS ACTION ALLEGATIONS

91. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of the following nationwide Class:

> All persons residing in the United States whose PII was compromised in the Data Breach made public by Defendant in December 2025 (the "Class").

92. Excluded from the Class is Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

93. Plaintiffs reserve the right to modify, expand or amend the above Class definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

94. Certification of Plaintiffs' claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

95. **Numerosity**. All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The Members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiffs are informed and believe that there are likely thousands of Members of the Class, the precise number of Class Members is not yet known to Plaintiffs.

96. Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice

dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

97. **Commonality and Predominance**. All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a. Whether Defendant engaged in active misfeasance and misconduct alleged herein;

b. Whether Defendant owed a duty to Class Members to safeguard their sensitive PII;

c. Whether Defendant failed to implement and maintain reasonable security procedures and monitoring practices appropriate for the nature and scope of the information compromised in the Data Breach;

d. Whether Defendant breached its duty to Class Members to safeguard their sensitive PII;

e. Whether Defendant's conduct violated the FTC Act;

f. Whether Defendant's data security systems and monitoring processes prior to and during the Data Breach complied with applicable law and were consistent with industry standards;

g. Whether Defendant was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiffs and Class Members;

h. Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of the Data Breach;

i. Whether Defendant's failure to provide adequate security proximately caused Plaintiffs' and Class Members' injuries;

j. Whether Defendant owed a duty to provide timely and adequate notice of the Data Breach to Plaintiffs and Class Members;

k. Whether Defendant failed to notify Plaintiffs and Class Members as soon as practicable and without delay after the Data Breach was discovered; and

l. Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief.

98. **Typicality.** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiffs' claims are typical of the claims of all Class Members because Plaintiffs, like other Class Members, suffered theft of their sensitive personal information in the Data Breach.

99. **Adequacy of Representation.** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiffs are adequate Class representatives because they are Members of the Class and their interests do not conflict with the interests of other Class Members that they seek to represent. Plaintiffs are committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiffs have retained counsel competent and experienced in complex class action litigation of this type, and Plaintiffs intends to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class's interests.

100. **Predominance and Superiority.** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiffs' case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

101. **Cohesiveness**. All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

## CLAIMS FOR RELIEF

## COUNT I

## NEGLIGENCE

102. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

103. Defendant obtained Plaintiffs' and Class Members' PII from Plaintiffs and Class Members.

104. Defendant required Plaintiffs and Class Members to provide their PII in order to enroll and obtain Defendant's services, specifically education related benefits. Defendant collected, maintained, and stored Plaintiffs' and Class Members' PII and used it for commercial gain.

105. By collecting and maintaining sensitive PII, Defendant had a common law duty of care to use reasonable means to secure and safeguard the sensitive PII and to prevent disclosure of the information to unauthorized individuals. Defendant's duty included a responsibility to implement processes by which it could detect a data breach of this type and magnitude in a timely manner.

106. Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, securing, safeguarding, storing, and protecting Plaintiffs' and Class Members' PII in its control from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

107. Defendant's duty included a responsibility to implement processes by which it could detect a data breach of this type and magnitude in a timely manner.

108. Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with the various industry standards, statutory requirements, regulations, and other notices described above.

109. Defendant's duty of care also arose as a result of the special relationship that existed between Defendant and Plaintiffs and Class Members. The special relationship arose because Plaintiffs and Class Members entrusted Defendant with their confidential data as part of the enrollment process. Only Defendant was in a position to ensure it had sufficient safeguards to protect against the foreseeable risk that a data breach could occur and would result in substantial harm to Plaintiffs and Class Members.

110. Defendant's duties also arose under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal and confidential information.

111. Various FTC publications and data security breach orders further form the basis of Defendant's duty. In addition, several individual states have enacted statutes based upon the FTC Act that also created a duty.

112. Defendant was subject to an "independent duty" untethered to any contract between Plaintiffs and Class Members and Defendant.

113. Defendant owed Plaintiffs and Class Members a duty to notify them within a reasonable time frame of any breach to their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiffs and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of the Data Breach.

114. Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, Defendant actively sought and obtained the PII of Plaintiffs and Class Members.

115. Given the vast amount of highly valuable PII that Defendant aggregates, the risk that unauthorized persons would attempt to gain access to Plaintiffs' and Class Members' PII and misuse it was foreseeable.

116. Defendant knew or should have known the importance of exercising reasonable care in handling the PII entrusted to it.

117. Given the nature of Defendant's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, Defendant should have identified and foreseen vulnerabilities in its systems and prevented the authorized exfiltration of Plaintiffs' and Class Members' PII.

118. It was or should have been reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class members' PII by failing to ensure that the third parties it shares PII with design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class members' PII to unauthorized individuals.

119. It was also foreseeable that Defendant's failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiffs and Class Members.

120. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect its students' sensitive PII, including Plaintiffs and Class Members.

121. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiffs' and Class Members' PII. And but for Defendant's negligence, Plaintiffs and Class Members would not have been injured. The specific negligent acts and omissions committed by Defendant include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiffs' and Class Members' PII;

b. Failing to comply with—and thus violating—FTC Act and its regulations;

c. Failing to adequately monitor the security of its networks and systems;

d. Failing to have in place mitigation policies and procedures;

e. Allowing unauthorized access to Plaintiffs' and Class Members' PII;

f. Failing to detect in a timely manner that Plaintiffs' and Class Members' PII had been compromised; and

g. Failing to timely notify Plaintiffs and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

122. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiffs' and Class Members' PII would result in injury to Plaintiffs and Class Members.

123. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry. It was therefore foreseeable that the failure to adequately safeguard Plaintiffs' and Class Members' PII would result in one or more types of injuries to Plaintiffs and Class Members.

124. Plaintiffs and Class Members had and have no ability to protect their PII that was, or remains, in Defendant's possession and control.

125. But for Defendant's negligent conduct or breach of the above-described duties, Plaintiffs' and Class Members' PII would not have been compromised. The PII of Plaintiffs and the Class was accessed and stolen as the proximate result of Defendant's failure to exercise reasonable care in safeguarding, securing, and protecting such PII by implementing and maintaining appropriate security measures and otherwise comply with application industry standards, regulations, and law.

126. Defendant's failure to take proper security measures created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiffs' and Class Members' PII.

127. Neither Plaintiffs nor the other Class Members contributed to the Data Breach and subsequent misuse of their PII.

128. It was foreseeable to Defendant that a failure to use reasonable measures to protect its students' sensitive PII could result in injury to consumers. Further, actual and

attempted breaches of data security were reasonably foreseeable to Defendant given the known frequency of data breaches and various warnings from industry experts.

129. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have been injured as alleged herein. Plaintiffs and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

130. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT II

## NEGLIGENCE *PER SE*

131. Plaintiffs re-allege and incorporates by reference all preceding allegations as if fully set forth herein.

132. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendant for failing to use reasonable measures to protect sensitive PII.

133. Various FTC publications and orders also form the basis of Defendant's duty.

134. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and disclosed and the foreseeable consequences of a data breach.

135. Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

136. Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiffs and Class Members.

137. As a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have been injured as alleged herein. Plaintiffs and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

138. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

139. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT III

## UNJUST ENRICHMENT

140. Plaintiffs re-allege and incorporates by reference all preceding allegations as if fully set forth herein.

141. Plaintiffs and Class Members conferred a monetary benefit upon Defendant in the form of monies paid while utilizing Defendant's educational services.

142. The monies Plaintiffs and Class Members paid to Defendant were supposed to be used by Defendant, in part, to pay for and oversee adequate data privacy infrastructure, practices, and procedures.

143. Plaintiffs and Class Members engaged Defendant for educational services and provided Defendant with, and allowed Defendant to collect, their PII on the mistaken belief that Defendant complied with its duty to safeguard and protect its students' PII. Putting its short-term profit ahead of safeguarding PII, and unbeknownst to Plaintiffs and Class Members, Defendant knowingly sacrificed security in favor of collecting moneys Defendant believed it was owed. Defendant knew that the manner in which it maintained Plaintiffs' and Class Members' PII violated its fundamental duties to Plaintiffs and Class Members by disregarding industry-standard security protocols to ensure confidential information was securely transmitted and stored.

144. Defendant had within its exclusive knowledge at all relevant times the fact that it failed to implement adequate security measures to keep its students' PII secure. This information was not available to Plaintiffs, Class Members, or the public at large.

145. And based on this expectation and trust, Defendant knew that Plaintiffs and Class Members would not have disclosed their sensitive information to it and would have chosen different educational providers for services.

146. Plaintiffs and Class Members did not expect that Defendant would store or transmit their PII insecurely or engage with software providers, that employed substantially deficient security protocols and would store sensitive PII.

147. Plaintiffs and Class Members conferred a monetary benefit on Defendant by paying money for educational benefits and other services, a portion of which was intended to have been used by Defendant for data security measures to ensure the security of Plaintiffs' and Class Members' PII. Plaintiffs and Class Members further conferred a benefit on Defendant by entrusting their PII to Defendant from which Defendant derived profits.

148. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by avoiding its network and data security monitoring and auditing measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to ensure adequate security.

149. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiffs and Class Members, because

Defendant failed to implement appropriate data security measures that are mandated by industry standards.

150. Defendant acquired the monetary benefit, PII through inequitable means in that Defendant failed to disclose the inadequate security practices, previously alleged, and failed to maintain adequate data security practices.

151. Had Plaintiffs and Class Members known about Defendant's practices, Plaintiffs and Class Members would not have engaged Defendant to provide educational benefits and other related services and would never have provided Defendant with their PII.

152. By withholding these material facts, Defendant put its own interests ahead of its students' interests and benefitted itself to the detriment of Plaintiffs and Class Members.

153. As a result of its conduct as alleged herein, Defendant as a for profit college enrolled more students than it otherwise would have and was able to charge Plaintiffs and Class Members when it otherwise could not have. Defendant was unjustly enriched by charging for and collecting those benefits and other services to the detriment of Plaintiffs and Class Members.

154. Defendant's defective security and its unfair and deceptive conduct has, among other things, caused Plaintiffs and Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their private PII.

155. Plaintiffs and Class Members have no adequate remedy at law.

156. As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members suffered—and will continue to suffer—other forms of injury and/or harm.

157. Defendant's conduct caused Plaintiffs and Class Members to suffer damages as alleged herein.

158. Defendant's conduct caused Plaintiffs and Class Members to suffer damages in an amount equal to the difference in value between what they paid for (Defendant's services made with adequate data privacy and security practices and procedures), and what they actually received (Defendant's services without adequate data privacy and security practices and procedures).

159. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

**COUNT IV**

**DECLARATORY AND INJUNCTIVE RELIEF**

160. Plaintiffs re-allege and incorporates by reference all preceding allegations as if fully set forth herein.

161. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

162. An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and statutory duties to reasonably safeguard its students' sensitive PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches. Plaintiffs alleges that Defendant's data security practices remain inadequate.

163. Plaintiffs and Class Members continue to suffer injury as a result of the compromise of their sensitive PII and remain at imminent risk that further compromises of their PII will occur in the future.

164. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant continues to owe a legal duty to secure Class Members' PII and to timely notify Class Members of a data breach under the common law and Section 5 of the FTC Act; and

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure members' PII, including to monitor, oversee, and audit its compliance with applicable industry standards, laws, and regulations.

165. The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect Defendant's students' sensitive PII.

166. If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another

data breach is real, immediate, and substantial. If another breach occurs, Plaintiffs and Class Members will not have an adequate remedy at law, because not all of the resulting injuries are readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

167. The hardship to Plaintiffs and Class Members if an injunction does not issue greatly exceeds the hardship to Defendant if an injunction is issued. If another data breach occurs, Plaintiffs and Class Members will likely be subjected to substantial identify theft and other damages. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

168. Issuance of the requested injunction will serve the public interest by preventing another data breach concerning Defendant's students' PII, thus eliminating the additional injuries that would result to Plaintiffs and the thousands of consumers whose confidential information would be further compromised.

## REQUEST FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendant including the following:

A. Determining that this matter may proceed as a class action and certifying the Class asserted herein;

B. Appointing Plaintiffs as representatives of the applicable Class and appointing Plaintiffs' counsel as Class Counsel;

C. Awarding Plaintiffs and Class Members actual, compensatory, punitive, and nominal damages as set forth above;

D. Ordering injunctive relief requiring Defendant to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) provide lifetime free credit monitoring and identity theft insurance to all Class Members; and (iv) timely notify students of any future data breaches;

E. Entering a declaratory judgment stating that Defendant owes a legal duty to secure its students' sensitive PII, to timely notify students of any data breach, and to establish and implement data security measures that are adequate to secure sensitive personal information;

F. Awarding attorneys' fees, costs, and expenses, as provided by law or equity;

G. Awarding pre-judgment and post-judgment interest, as provided by law or equity; and

H. Such other relief as the Court may allow.

**DEMAND FOR JURY TRIAL**

169. Plaintiffs demand a trial by jury for all issues so triable.

Dated: December 4, 2025

Respectfully submitted,

s/ Russell S. Thompson, IV
Russell S. Thompson, IV (029098)
Thompson Consumer Law Group, PC
11445 E Via Linda, Ste. 2 #492

Scottsdale, AZ 85259
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com

Christian Levis (*pro hac vice forthcoming*)
Amanda G. Fiorilla (*pro hac vice forthcoming*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
Email: clevis@lowey.com
Email: afiorilla@lowey.com

Anthony M. Christina (*pro hac vice forthcoming*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
Email: achristina@lowey.com

*Counsel for Plaintiffs and the Class*